# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD N. BELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:16-cv-02491-TWP-DML ) |
| DAVID N. POWELL, individually, and MIDWEST REGIONAL NETWORK FOR INTERVENTION WITH SEX OFFENDERS, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross-motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. On April 9, 2018, Defendant Midwest Regional Network for Intervention with Sex Offenders ("MRNISO") and Defendant David N. Powell ("Powell"), each filed a Motion for Summary Judgment (Filing No. 70, Filing No. 73, respectively). That same day, Plaintiff Richard N. Bell ("Bell") filed Plaintiff's Motion for Summary Judgment for Copyright Infringement (Filing No. 76). Bell initiated this action, seeking damages and declaratory and injunctive relief under copyright laws, alleging the unauthorized use of his nighttime photograph of the Indianapolis skyline. For the following reasons, the Court **grants** Powell's and MRNISO's Motions for Summary Judgment and **denies** Bell's Motion for Summary Judgment.

## I. BACKGROUND

Bell is an attorney and photographer. This litigation centers on a photograph taken by Bell in March 2000 of the Indianapolis, Indiana skyline at nighttime ("Indianapolis Nighttime Photo"). After taking the Indianapolis Nighttime Photo, Bell published it on the internet for the first time

on August 29, 2000, by uploading it to a Webshots account. It was later published on Bell's website at www.richbellphotos.com in April 2011. Bell registered the copyright of the Indianapolis Nighttime Photo with the United States Copyright Office on August 4, 2011, approximately eleven years after he first published the photograph on the internet. He has sold licenses for publication of the Indianapolis Nighttime Photo, has retained sole ownership of the copyright, and has used the photograph to promote his photography business. Bell sells a digital download version of the Indianapolis Nighttime Photo for $200.00 on his website ([Filing No. 77-1 at 1](#)–2).

MRNISO is an Indiana non-profit professional network. Its goal is to provide professional networking in order to reduce incidents of sexual assault, provide education on various topics on sexual assault, and to provide support for victims, survivors, and families of sexual assault. MRNISO accepts membership dues from professionals representing various disciplines involved in sex offender intervention to support its mission. The annual membership fee in 2015 was $25.00. MRNISO members could attend MRNISO conferences for free, receive cross-training and networking opportunities with other sexual assault intervention professionals, subscriptions to the MRNISO newsletter, and continuing education credits. In 2015, MRNISO's total membership was 76 individuals ([Filing No. 82 at 1](#)–2).

MRNISO holds an annual, one-day conference in Indianapolis where presenters discuss issues of sexual assault intervention. MRNISO does not profit from its annual conference. Any monies received by MRNISO are used in furtherance of its mission. The board of directors and any other interest holders in MRNISO are unpaid and receive no income. *Id.* at 2.

On April 24, 2015, MRNISO held its annual conference in downtown Indianapolis at the Indiana Historical Society. To notify its members of the 2015 Spring Conference, MRNISO

created a brochure. *Id.* The brochure included a copy of the Indianapolis Nighttime Photo alongside two other pictures and text (Filing No. 77-7). The only purpose of creating the 2015 Spring MRNISO Conference brochure was to inform members and non-members of the time, date, and location of the conference. MRNISO did not profit from the use of its 2015 Spring MRNISO Conference brochure. MRNISO has never sold or offered to sell its 2015 Spring MRNISO Conference brochure, and it has never sold any copies of the Indianapolis Nighttime Photo, which was embedded in the brochure (Filing No. 82 at 3).

In 2015, MRNISO's website published the conference brochure with the Indianapolis Nighttime Photo without obtaining a license or necessary authorization from Bell to use the photograph. MRNISO failed to disclose the source of the Indianapolis Nighttime Photo or confer credit to Bell (Filing No. 77-1 at 3).

Powell is the executive director of the Indiana Prosecuting Attorneys Council ("IPAC") located in Indianapolis, Indiana. IPAC is a state judicial branch agency established by Indiana statute, consisting of Indiana's prosecutors. IPAC maintains a website at http://www.in.gov/ipac. Powell does not directly own, maintain, or edit IPAC's website or the content uploaded to IPAC's website. As the executive director of IPAC, Powell has assigned the maintenance and development of the website to other IPAC employees. Powell does not have any interest in or affiliation with MRNISO. He has no authority or control over MRNISO in any way (Filing No. 74-1 at 1–2).

IPAC's website informs viewers that they are invited to send posts to it: "If you would like to post a training on this site, please send your request to: cosmith1@ipac.in.gov." (Filing No. 77-1 at 3; Filing No. 77-6.) MRNISO asked IPAC to advertise its 2015 spring conference on IPAC's website. A link was created on IPAC's website to MRNISO's 2015 Spring Conference brochure (Filing No. 74-1 at 2).

3

Powell did not personally download the Indianapolis Nighttime Photo from Bell's website or any other website. Powell did not personally access Bell's website or the Indianapolis Nighttime Photo. He did not directly facilitate MRNISO's involvement with IPAC or ever view a copy of MRNISO's brochure. Powell had no personal knowledge that the Indianapolis Nighttime Photo was used on MRNISO's brochure or on its website. He did not personally upload or direct anyone to upload the 2015 MRNISO Spring Conference brochure to IPAC's website. He did not approve copying the MRNISO brochure, and he did not approve or direct anyone to download or copy any content from the brochure while it was available on IPAC's website. He also did not induce anyone to use the Indianapolis Nighttime Photo. Powell and IPAC did not profit from MRNISO's brochure being displayed on IPAC's website. *Id.* at 2–3.

In April 2016, Bell discovered through the computer program "Google Images" that the Indianapolis Nighttime Photo was being used without his permission on the MRNISO conference brochure on IPAC's website at http://www.in.gov/ipac ([Filing No. 77-1 at 3](); [Filing No. 77-8](); [Filing No. 77-9]()). The webpage included a link to "Learn More," which linked to a PDF document of the MRNISO brochure with the Indianapolis Nighttime Photo. By clicking on "Learn More," individuals automatically downloaded the brochure to their computers as a PDF file ([Filing No. 77-1 at 3]()). Bell notified IPAC and the State of Indiana as well as MRNISO of the unauthorized use of the Indianapolis Nighttime Photo and demanded payment for the use. However, MRNISO and Powell refused to pay for the use of the Indianapolis Nighttime Photo. *Id.* at 4.

On September 18, 2016, Bell filed this action against Powell and MRNISO, asserting a claim for copyright infringement and unfair competition and seeking damages and declaratory and injunctive relief ([Filing No. 1]()). Powell filed a Motion to Dismiss, which was granted, and Bell filed an Amended Complaint with a claim for copyright infringement against Powell and MRNISO

([Filing No. 40](#)). In his Amended Complaint, Bell asserted that Powell "is being sued individually and not as an employee of the state of Indiana." *Id.* at 3, ¶ 10. Each of the parties have filed individual motions seeking summary judgment pursuant to Federal Rule of Civil Procedure 56.

## II.   SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III. DISCUSSION

Powell and MRNISO argue that they are entitled to summary judgment because of the "fair use" doctrine and because the evidence does not support the elements of a copyright infringement claim. In addition, Powell asserts that Eleventh Amendment immunity protects him against suit. Bell argues that he is entitled to summary judgment because there is no dispute that Powell and MRNISO used his Indianapolis Nighttime Photo without authorization, and the only question

remaining for trial is whether their conduct amounts to willful infringement. The Court will first address Powell's Eleventh Amendment immunity argument and then turn to the other arguments.

A.      **<u>Eleventh Amendment Immunity</u>**

In the Amended Complaint, Bell asserts that Powell "is being sued individually and not as an employee of the state of Indiana." ([Filing No. 40 at 1](#).) He alleges that Powell "is individually liable to Plaintiff because Defendant Powell controlled, supervised, had final authority over the content of http://www.in.gov/ipac," and Powell "individually approved the copying of the 2015 MRNISO Spring Conference Brochure containing the 'Indianapolis Nighttime Photo' on to the website http://www.in.gov/ipac." Bell contends that Powell "is individually responsible for the content of the website http://www.in.gov/ipac . . . , individually authorized the copying and republication of the Indianapolis Nighttime Photo without permission . . . , [and] is individually liable to Plaintiff because [Powell] controlled, supervised, and had final authority of the content published on [http://www.in.gov/ipac](#)." *Id.* at 1–3, 9–10.

When facing a motion for summary judgment, a non-moving party cannot rest on its pleadings; it must come forward with designated evidence to support his claims. Bell's evidence consists of an article published in "*The Indiana Prosecutor*" where "Powell personally encouraged his constituents to visit the IPAC website 'on a regular basis,'" ([Filing No. 83 at 12](#); [Filing No. 77-5 at 1](#)); a 2011 "job description" for the executive director of IPAC, noting that Powell is "responsible for all facets of IPAC operation including information systems, training, publications and legal assistance," ([Filing No. 83 at 15](#); [Filing No. 83-3](#)); and that Powell's "name is on the left-hand side of IPAC's webpage as the person responsible for said website," ([Filing No. 83 at 15](#); [Filing No. 77-9](#)). Bell asserts that this evidence shows Powell is personally and individually liable for the infringement on IPAC's website.

Interestingly, Bell acknowledges that "Powell is in charge and responsible for the IPAC website *in a supervisory capacity* and his name is on the left-hand side of IPAC's webpage as the person responsible for said website. Powell therefore should be directly liable and, in the alternative, secondarily liable *for the actions of his staff*." ([Filing No. 83 at 15](#) (emphasis added).) It is also noteworthy that Bell admits he filed a tort claim notice with IPAC and the State of Indiana after discovering the use of the Indianapolis Nighttime Photo on a state agency website ([Filing No. 77-1 at 4](#)).

A review of Bell's allegations, and more importantly at the summary judgment stage the designated evidence, reveals that Bell's claim against Powell stems from Powell's official role as the executive director of IPAC, a state agency. Bell's summary judgment evidence and arguments all point to Powell's alleged actions as IPAC's director. Bell's claim against Powell relies entirely on Powell's responsibilities as the director of IPAC. As Powell correctly and succinctly explained, he "would not be facing Bell's allegations if he were not the Executive Director of the IPAC. The sole reason that Powell is a party to this action, as made clear via both Bell and Powell's evidence, is only because he is responsible for 'all facets' of IPAC's operation." ([Filing No. 93 at 4](#)–5.)

The United States Supreme Court has directed that "courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (U.S. 2017). The Supreme Court further directed that, in making this determination, "courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id.*

It is clear from the pleadings, the designated evidence, and the parties' summary judgment arguments that Bell's claim against Powell is a claim against him as the director of a state agency.

As such, the claim is barred by Eleventh Amendment immunity. *See Bell v. Hess*, 2018 U.S. Dist. LEXIS 38595, at *16 (S.D. Ind. Mar. 9, 2018) (case dismissed because "[i]t is clear from the pleadings that Bell is seeking to impose liability against Indiana University, and his amendments to his original complaint were an attempt to circumvent Eleventh Amendment sovereign immunity. Hess is entitled to Eleventh Amendment sovereign immunity in this case, and thus, Bell's claim is barred and cannot proceed."). The same rationale applies here. Therefore, on the basis of immunity, Powell's Motion for Summary Judgment is **granted**.

B.  **Fair Use Doctrine**

MRNISO asserts that it is entitled to summary judgment based on the fair use doctrine. The fair use doctrine is a statutory defense to a copyright infringement claim. *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014). The Copyright Act provides four non-exclusive factors to consider when determining the applicability of the fair use doctrine. *Id.* Those non-exclusive statutory factors are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. "Fair use is a mixed question of law and fact, which means that it may be resolved on summary judgment if a reasonable trier of fact could reach only one conclusion--but not otherwise." *Ty, Inc. v. Publ'ns Int'l*, 292 F.3d 512, 516 (7th Cir. 2002) (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985)).

MRNISO asserts that applying these factors to the facts of this case results in a finding of fair use. MRNISO is a non-profit entity dedicated to reducing incidents of sexual assault. It provides professional networking opportunities to reduce the incidents of sexual assault, provides education on various topics of sexual assault, and provides support for victims, survivors, and their families. It holds an annual conference where presenters speak on topics regarding sexual assault intervention. The brochure at issue in this case was created solely to notify members and non-members of the time, date, and location of its 2015 spring conference. The Indianapolis Nighttime Photo was placed in the background of the brochure's heading next to a separate graphic and altered by the superimposed words "2015 Spring MRNISO Confernce" [sic] over the image with the date "April 24, 2015" also superimposed on the photograph.

As MRNISO points out, the purpose of the brochure was to promote a conference on the direct and ancillary topics relating to sexual assault. The brochure does not prominently feature the Indianapolis Nighttime Photo, and the Indianapolis Nighttime Photo is the only photograph on the brochure to feature any direct transformation. The brochure did not feature the photograph, and the brochure's purpose was not to feature the photograph. Rather, the photograph appeared with two other photographs to show the location of the conference. Although the Indianapolis Nighttime Photo may retain some of its original character, MRNISO asserts, by being added to the larger brochure and edited to promote a conference on sexual assault, the photograph's purpose and character were changed. Additionally, neither MRNISO nor Powell profited from the use of the 2015 Spring MRNISO Conference brochure, and MRNISO and its board of directors and other interest holders do not profit from holding its annual conference.

MRNISO also notes that it has not and does not sell the Indianapolis Nighttime Photo or its conference brochure. MRNISO argues that any market for Bell's photograph is entirely

unaffected by the photograph's appearance in the upper right-hand corner of the brochure with words superimposed onto it. The brochure as a whole and the upper right-hand corner of the brochure with the photograph with superimposed words cannot serve as a market substitute for the Indianapolis Nighttime Photo.

Bell responds that the fair use doctrine does not apply to defeat his copyright infringement claim because MRNISO's use of the Indianapolis Nighttime Photo did not have "anything to do with 'criticism, comment, new reporting, teaching, scholarship or research.'" ([Filing No. 83 at 5](Filing No. 83 at 5)) (quoting 17 U.S.C. § 107).) Bell argues that the brochure itself was not educational, and the conference that the brochure advertised required a registration fee of $25.00 or $35.00, and thus, it was a commercial endeavor. The purpose of the brochure was to advertise a conference that charged an admission fee, which constitutes a "commercial use."

Bell also argues that a side-by-side comparison of the Indianapolis Nighttime Photo and the photograph copied onto the brochure reveals that the Indianapolis Nighttime Photo was copied pixel by pixel. The only difference is that MRNISO superimposed words on top of the photograph. It was a clear copying of the photograph without authorization to use for marketing an event. Bell asserts the nature of the use of the photograph was purely advertising material. And Bell further argues that because MRNISO used the photograph in its entirety, the fair use doctrine should not apply. Bell argues that MRNISO's placement of the brochure on IPAC's website allowed any third-party to click on a link and download the Indianapolis Nighttime Photo, an act that promoted widespread infringement, which would adversely affect the potential market for the photograph. Bell asserts that internet users could simply download his photograph without cost by clicking on the link on IPAC's website, thereby ruining Bell's market.

The designated evidence in this case points to one conclusion. The fair use doctrine applies to MRNISO's use of the Indianapolis Nighttime Photo. Bell's assertion that widespread infringement would occur by internet users' acts of downloading the brochure is highly speculative. Importantly, any internet user who clicked the link on IPAC's website would download the MRNISO 2015 Spring Conference brochure, not the Indianapolis Nighttime Photo. The sexual assault conference brochure is not in the same market as the city skyline photography market. The brochure—which included the photograph with superimposed letters in the upper right-hand corner alongside two other photographs—could not be found by any reasonable trier of fact to be a market substitute for the Indianapolis Nighttime Photo.

The nature of Bell's Indianapolis Nighttime Photo was a depiction of a city skyline in order to sell copies of a photograph of the Indianapolis skyline, whereas the nature of the photograph on MRNISO's brochure was to provide a factual depiction of Indianapolis to inform the public about where an educational, professional conference on sexual assault would be held. While the Indianapolis Nighttime Photo appears to have been copied in its entirety, the photograph was included as only a small portion of the brochure in comparison to the entire brochure, and as the Defendants correctly pointed out, the Indianapolis Nighttime Photo was only one of many photographs comprising Bell's copyrighted work as a whole ([Filing No. 77-10](Filing No. 77-10)).

While MRNISO charged a registration fee of $25.00 or $35.00 to attend the 2015 Spring Conference, the designated evidence indicates that the registration fees were used to further MRNISO's mission of educating professionals on how to reduce sexual assault. No profit was gleaned from the fees for the benefit of MRNISO or its board of directors and other interest holders. The brochure was not sold, and MRNISO did not sell the Indianapolis Nighttime Photo. There was no commercial use. Rather, the Indianapolis Nighttime Photo was used in conjunction with

two other photographs and extensive text to inform the public about an educational, professional conference on reducing sexual assault.

Each of the factors to be considered under the fair use doctrine point in favor of applying the defense in this case. Therefore, the Court concludes that MRNISO is entitled to summary judgment on the basis of the fair use doctrine.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** MRNISO's and Powell's Motions for Summary Judgment ([Filing No. 70](); [Filing No. 73]()), and **DENIES** Bell's Motion for Summary Judgment ([Filing No. 76]()). In light of the rulings on the Motions for Summary Judgment, the Court **DENIES as moot** the Motion for Leave to File Surreply ([Filing No. 94]()).

Final judgment will issue under separate order.

**SO ORDERED.**

Date: 10/11/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Richard N. Bell
BELL LAW FIRM
richbell@comcast.net

Maura K. Kennedy
LAW OFFICE OF MAURA K. KENNEDY
attorneymaurakennedy@gmail.com

Eric D. Schmadeke
DENSBORN BLACHLY LLP
eschmadeke@dblaw.com

Clifford M. Robinson
DENSBORN BLACHLY LLP
crobinson@dblaw.com

Bryan Findley
INDIANA ATTORNEY GENERAL'S OFFICE
bryan.findley@atg.in.gov

Rebecca L. Loeffler
INDIANA ATTORNEY GENERAL'S OFFICE
rebecca.loeffler@atg.in.gov

Rebecca L. McClain
INDIANA ATTORNEY GENERAL'S OFFICE
rebecca.mcclain@atg.in.gov